ACCEPTED
01-14-00082-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
2/9/2015 5:01:40 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00082-CV

## IN THE COURT OF APPEALS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
2/9/2015 5:01:40 PM
CHRISTOPHER A. PRINE
Clerk

## FOR THE FIRST DISTRICT OF TEXAS

## AT HOUSTON

## MARY LYNN KANTARA GERKE

## V.

## JAMIL "JAMES" KANTARA

## APPELLANT'S RESPONSE TO NOTICE OF DISMISSAL FOR WANT OF JURISDICTION

TO THE HONORABLE COURT OF APPEALS:

Appellant files this response to this Court's notice dated January 27, 2015 regarding its intention to dismiss this matter for lack of jurisdiction.

## BACKGROUND

1. On October 28, 2013, Associate Judge Newey signed the Order in Suit to Modify the Parent-Child Relationship ("Order") from which Mary Lynn Kantara Gerke now appeals.

2. The Order does not include any written finding that the parties waived their right to appeal Judge Newey's order to the referring court. At the time, Judge

1

Denise Pratt presided over the referring court.

3. However, prior to trial and entry of the Order, the parties twice waived on the record their right to appeal Judge Newey's decision on final trial.

4. The parties first waived on the record their right to appeal to Judge Pratt on November 28, 2011. *See* Exhibit 1 at pp.5-6.

5. Subsequently, on August 17, 2012, the parties confirmed that they waived their right to appeal Judge Newey's judgment on final trial. *See* Exhibit 2 at p.

## ARGUMENT & AUTHORITIES

6. This Court has jurisdiction over this appeal, because the Order does constitute a final judgment.

7. Under Section 201.007 of the Texas Family Code, "an associate judge may sign a final order that includes a waiver of the right of appeal pursuant to Section 201.015." (emphasis added) TEX. FAM. CODE §201.007(a)(16).

8. Section 201.015 allows parties to waive their right to appeal to the referring court in writing *or* verbally on the record. TEX. FAM. CODE §201.015(g).

9. A prior waiver under Section 201.015(g) is sufficient to establish an associate judge's authority to enter a final order under Section 201.007(a)(16). The order in question does not have to include a written finding that the parties already waived their right to appeal. And the mere fact that an order does not include a written reference to the prior waiver does not deprive an associate judge to enter

2

a final order under Section 201.007(a)(16). *See Wells v. Wells*, 2010 Tex. App. LEXIS 6787, at 2 (Tex. App. –Houston [14th Dist.] Aug. 19, 2010, pet. denied) (finding that an order was final under Section 201.007(a)(16) even though the order did not include a written reference to a waiver, because the parties had already waived their right to appeal approximately one month prior to entry of the final order) (attached hereto as *Exhibit 3*).

10. Because the parties in this matter had already waived on the record their right to appeal under Section 201.015(g), Judge Newey had the authority to enter a final order in this matter under Section 201.007(a)(16). Therefore, the Order is a final judgment and is appealable.

Respectfully submitted,

LAURA DALE & ASSOCIATES, P.C.

/s/ Ashley V. Tomlinson
ASHLEY V. TOMLINSON
1800 St. James Place, Suite 620
Houston, Texas 77056
Tel: (713) 600-1717
Fax: (713) 600-1718
State Bar No. 24075170
E-Service: eserviceavt@dalefamilylaw.com
Non-Service:
atomlinson@dalefamilylaw.com
Attorney for Mary Kantara Gerke

3

## CERTIFICATE OF SERVICE

I certify that on this 9th day of February, 2015, a true and correct copy of the foregoing document was served in accordance with the Texas Rules of Civil Procedure as follows:

Mr. Wilfried Schmitz
17040 El Camino Real, Suite 400
Houston, Texas 77058
Attorney of record for Mr. Kantara
*Via E-Service*

Douglas York
3355 W Alabama, Suite 100
Houston, TX 77098-1863
Amicus Attorney
*Via E-Service*

/s/ Ashley V. Tomlinson
ASHLEY V. TOMLINSON

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
CAUSE NO. 2011-46281

IN THE MATTER OF           ) IN THE DISTRICT COURT
THE MARRIAGE OF            )
Mary Lynn Kantara Gerke    )
AND                        ) HARRIS COUNTY, TEXAS
Jamil James Kantara        )
                           )
AND IN THE INTEREST OF     )
J███ Ka██████              )
J███ Ka█                   )
J███ Ka█                   )
and                        )
J███████ Ka██████          ) 311TH JUDICIAL DISTRICT

---

**HEARING**

---

On the 28th day of November, 2011, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Robert Newey, Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by computerized stenotype machine.

*ORIGINAL*

EXHIBIT 1

**APPEARANCES**

Ms. Mary Lynn Kantara Gerke
707 Almond Pointe
League City, Texas 77573
Telephone: 281-332-8858
Pro se

Mr. Wilfried Schmitz
SBOT NO. 17778700
WILFRIED SCHMITZ & ASSOCIATES
17040 El Camino Real
Suite 400
Houston, Texas 77058
Telephone: 281-486-5066
Counsel for Defendant

VOLUME 1
INDEX
Hearing

November 28, 2011

Reporter's Certificate ...........................26    1

THE COURT: All right. Court calls Cause No. 2011-46281; In the Interest of J████, J████, J████, and J██████ Ka████.

Counsel, identify yourself for the record, please.

MR. SCHMITZ: Your Honor, I'm Wilfried Schmitz, S-c-h-m-i-t-z. I represent James Kantara.

THE COURT: Introduce yourself, please.

MS. GERKE: My name is Mary Lynn Kantara Gerke, G-e-r-k-e; and I'm pro se.

THE COURT: And what's set this morning -- this afternoon?

MR. SCHMITZ: Your Honor, it's Mrs. Gerke's motion that the children to confer with the judge; my motion for attorney fees, and motion to protective order and a protective hearing.

THE COURT: Okay. How old is the oldest child?

MS. GERKE: Sixteen and a half.

THE COURT: Okay. Is she on this case?

MR. SCHMITZ: Yes, your Honor. Well, she's my client's cousin.

THE COURT: I'm sorry?

MR. SCHMITZ: She's my client's cousin.

THE COURT: Oh, okay. So, is this a

custody case?

MS. GERKE: It's a modification case.

THE COURT: Asking for what?

MS. GERKE: Asking -- at this point for confer with the children to see what their preferences are as far as primary residence and possession and access, electronic communication, counseling.

THE COURT: So, if this case doesn't get resolved, who's going to hear it on final?

MR. SCHMITZ: It doesn't matter to me, your Honor -- just you or Judge Pratt, either one of you.

THE COURT: I'm the associate judge. Judge Pratt is the elected judge. I'll be happy to hear it for you, but you will have to waive your right of appeal to Judge Pratt and agree to appeal only to the Court of Appeals for me to hear it; otherwise, you need for her to hear it.

MS. GERKE: I don't think -- you are fine.

THE COURT: I'm sorry?

MS. GERKE: You are fine. You or Judge Pratt.

THE COURT: Are you okay for me hearing it?

MR. SCHMITZ: Yes, your Honor.

THE COURT: Now, why are you opposing me interviewing -- and how old is the youngest child? How old is J█████████?

MR. SCHMITZ: J█████████ is just ten. J███████ is the one who turned 12 since the last modification. She's 13 now. She turned 12 when --

THE COURT: And you want me to interview all three of these kids?

MS. GERKE: Yes, your Honor.

THE COURT: Why should I not do that?

MR. SCHMITZ: Your Honor, this is request of jury trial in this matter. There's no -- no motion for temporary orders.

THE COURT: Did you request a jury trial?

MS. GERKE: I requested a confer to determine what their preference is.

THE COURT: Did you request a jury trial?

MS. GERKE: No, your Honor.

THE COURT: Did you?

MR. SCHMITZ: Yes, your Honor.

THE COURT: If a jury trial has been requested, then it's useless to interview the children because I or Judge Pratt or whoever wouldn't be able to pass on any information to anybody about that interview anyway.

MS. GERKE: Your Honor, I haven't requested that there be a change in the primary residence unless the children confer. I'm just asking for temporary orders at this point in time.

THE COURT: Well, I understand that; but it is ultimate request for a jury trial.

MS. GERKE: The question --

THE COURT: We are not going to change the residence that's been previously established by court order solely on the preference of the child or the children.

MS. GERKE: Okay.

THE COURT: There has to be an emergency or immediate threat to them before we will even consider that.

MS. GERKE: In the alternative, I -- I've asked for confer for it to talk to the children about what they would like as far as having additional expanded visitation or counseling other issues affecting their -- their relationship with both parents.

THE COURT: Is this case set for trial?

MR. SCHMITZ: Much to our chagrin, I believe my staff saw it and set the trial in February. I am not sure how -- court's dockets is in February.

THE COURT: Tammy, can you see or check

and see if this case is set on Judge Pratt's or on the docket for jury trial?

THE CLERK: Okay, Judge.

THE COURT: While she's doing that, who is presently primary?

MR. SCHMITZ: My client is, your Honor.

THE COURT: Okay.

THE CLERK: Jury trial when, Judge?

THE COURT: Say it again?

THE CLERK: When did y'all say it was for jury trial?

MR. SCHMITZ: I think we saw it was set on the court calendar in February. Called the jury request and --

THE COURT: When did you pay the jury fee?

MR. SCHMITZ: I would be telling the Court -- probably, three -- four weeks or a month ago? Two weeks ago? I can get the exact date if --

THE COURT: I'm sorry?

MR. SCHMITZ: -- the Court wants -- I can get the exact date.

THE COURT: It should be on the computer.

MR. SCHMITZ: I can call --

THE CLERK: Well, February 6th; but it's just on the general docket.

MR. SCHMITZ: Has the jury request fee been paid?

THE CLERK: Jury fee paid on November 14th.

So, they just paid for it, Judge.

THE COURT: Okay. But it's timely paid?

THE CLERK: Yes, sir.

THE COURT: All right. Let's deal with the protective order first.

MR. SCHMITZ: Your Honor, before we start this hearing, I would like to request by the rule -- invoke the rule.

THE COURT: Well, I haven't -- I need to hear the argument on the protective order before we take any witness' testimony.

MR. SCHMITZ: Okay. Sure.

Your Honor, on the protective order, I have before the Court -- make a long story short -- this case was originally a modification case. There was original trial date. It was 2006, a trial between the parties. The case was -- went up for modification in April -- March -- April of 2010. After a long jury trial, the --

THE COURT: When was this jury trial? In 2010?

MR. SCHMITZ: In 2010.

THE COURT: Was that in Galveston County?

MR. SCHMITZ: Galveston County.

THE COURT: Okay.

MR. SCHMITZ: The jury awarded the -- it would be the best of the children -- of all four children that my client be awarded primary -- to take care of all children at that time. Since that time, the order was signed in April 15th, 2002. Since that time, many things have happened.

My client was given the exclusive right at the consultation to make medical decisions on behalf of the children among other things. My client has attempted to take the children to several physicians, and he's always be impeded by "letter writing campaigns" or by whatever by Mrs. Gerke. In fact, attached to my motion is a letter from Dr. Kitt Harrison -- said that he's not even going to go ahead and see the children until he gets some of sort of protective order from this court because Mrs. Gerke, since that time, has filed numerous complaints against other medical professionals. She has been on a "letter writing campaign" to those medical professions. We can't get anybody to see these children with regard to -- with what's actually going on whether it be psychological,

et cetera -- in some cases, medical providers, such as lead doctors, et cetera.

THE COURT: The basis of your protective order is --

MR. SCHMITZ: Judge, that she doesn't contact them until after Kitt Harrison and the other professional that he decides has a chance to finish his report. And that's all we are asking for.

THE COURT: That she not contact who?

MR. SCHMITZ: Kitt Harrison -- unless he asks her to. No complaints against him, no threats against him, none of that sort of thing.

THE COURT: And your response?

MS. GERKE: Have you received my response, your Honor?

THE COURT: When did you file it?

MR. SCHMITZ: November 22nd.

THE COURT: Probably not. If you can provide me with a copy -- or let me see if Mr. Schmitz has it.

Do you have an extra copy of her response, or do you have a copy of your response?

MS. GERKE: Yes, sir.

THE COURT: All right.

MS. GERKE: Your Honor, Mr. Kantara,

according to the court orders, is supposed to confer with me before he takes the children to a physician, a counselor, or a psychologist or something like that. I've created a list for the kids have actually received all the medical care they need. What has happened is, in some instances, Mr. Kantara's -- I work a distance from my home; and so, the appointments will be in the middle of the day. So, I have sent faxes saying that these are my concerns. The kids -- I'm unaware of the kids not being able to receive any medical care as far as psychological care since the rendition -- or since the last orders. I requested the kids receive their own counselor that's independent of Mr. Kantara or myself. Mr. Kantara has engaged in this effort since the last court orders of trying to take the kids to his own private counselor; and I guess now, he's trying to make arrangements for an expert because he wants to further exclude me from these kids' lives. And this protective order is just a further effort to his -- to bias Mr. Henderson or Ms. Kennedy or whatever by not allowing me to have my input into what's going on with the kids --

THE COURT: Did you hire Dr. Harrison?

MR. SCHMITZ: Well, we attempted to -- yes, your Honor. We tried also hire Ms. Kennedy at one

point -- Dr. Kennedy --

THE COURT: But your protective order is aimed at protecting Dr. Harrison while he does his investigation?

MS. GERKE: That's right. Dr. Harrison and anybody else that he refers -- part of the work to --

THE COURT: Where do you work?

MS. GERKE: I work in Galveston.

THE COURT: I know. Doing what?

MS. GERKE: Moody National Bank.

THE COURT: Doing what?

MS. GERKE: I'm -- I'm an accountant.

THE COURT: I mean, both sides in a custody case have a right to hire their own expert if they want to. They pay for them. Expert does whatever the expert does, and then you have the right to take his deposition to enter into whatever discovery you need to find out whether or not any opinion he renders is valid or invalid or whatever.

Now, if he -- Dr. Harrison, in this instance, wants to talk to you; then he will make that desire known, and you can go talk to him. Otherwise, Mr. Schmitz's motion is to leave him alone while he's doing his investigation.

Why should I not grant that?  It appears that both of you have this ability to threaten the other with grievances against their doctors.  That's your right of free speech, but it is not helpful for your kids; nor is it helpful for the litigation process.  So, that's my question to you -- if it's their expert, why shouldn't they be able to have their expert do his work whatever that looks like before you have an opportunity to talk to him and cross-examine him.

MS. GERKE:  Mr. Schmitz's motion was not -- for Ms. Harrison-- just -- Mr. Harrison -- Mr. Schmitz's motion is for me to not to speak to any medical care provider --

THE COURT:  Right now, I'm just focusing on Dr. Harrison.

MS. GERKE:  -- Just Dr. Harrison --

THE COURT:  I mean, I'm inclined to grant it as to Dr. Harrison.  He is their expert.

MS. GERKE:  If they are going to have an examine for litigation purposes, and he's not their psychologist or their counselor --

THE COURT:  He's just -- he's just doing an evaluation from your standpoint; is that correct, Mr. Schmitz?

MR. SCHMITZ:  That is correct, your Honor.

THE COURT: Okay. Then, he's not a treater. He's an evaluator. You can hire your own evaluator if you want to.

No, I'm serious. That's the way this type of litigation unfolds. All right. I'll grant your motion as to Dr. Harrison. Are you asking for anything further?

MR. SCHMITZ: Yes, your Honor. Any other medical professionals that he may utilize in his investigation.

THE COURT: So, you want to --

MR. SCHMITZ: If he -- if he decides, for example, he wants to -- I don't know -- a testing by somebody else require testing and review that test or whatever he decides to do, stay out of it.

THE COURT: Not any of the treaters of his -- not any of the treaters of the children.

MR. SCHMITZ: Not any of the treaters per se.

MS. GERKE: Your Honor, I don't have any rights to get any sort of evaluation of any sort? All of those rights are Mr. Kantara's, so --

THE COURT: In this litigation you have the right to get whatever evaluation you think you need.

MR. SCHMITZ: With regards to the

children?

THE COURT: Absolutely. This is what this is about. There's a difference between an evaluation for litigation purposes and a treater for medical or psychological reasons.

MS. GERKE: Okay.

THE COURT: We're talking here only about evaluators. People who come in and tell the court or the jury what their opinion is of whatever the subject matter. They are not treaters. They are evaluators.

MS. GERKE: And if you don't have access to my children during the week to have this done, I still run into --

THE COURT: Well, then, I can help you with that. If they won't make the children available, I can help you with that. Now, what Mr. Schmitz is talking about is that Dr. Harrison may want to talk to some other doctor to do some other form of testing. One of these children apparently has some kind of special medical problem.

MS. GERKE: Your Honor, two of them have special medical problems, and just so that you are aware, that the kids have pretty much been tested every year since they were little. There have been family psychological evaluations, there have been educational

evaluations; there is evaluations everywhere on this entire family --

THE COURT: Nobody has evaluated the evaluators.

Well, I'm going to expand the motion, but it does not apply to any doctor who is treating any of these children. If Dr. Harrison wants some form of test done by somebody, he's going to have to find somebody who's not a treater of these children.

MR. SCHMITZ: Yes, your Honor. I'll draft you a court order.

THE COURT: Okay. What else?

MR. SCHMITZ: The last thing we have, your Honor, is our motion to enter attorney fees and for expert fees.

THE COURT: What is your client do for a living?

MR. SCHMITZ: He's an engineer for Lockheed Martin.

THE COURT: And makes how much a month?

MR. SCHMITZ: About 10,000.

THE COURT: I'm sorry?

MR. SCHMITZ: About 10,000 a month. Total.

THE COURT: A month?

MR. SCHMITZ: A month.

THE COURT: And is this a post-divorce modification, or were they born without benefit of the marriage?

MR. SCHMITZ: No, this is post -- this is second post-divorce modification. This second post-divorce modification was filed by Ms. Gerke.

THE COURT: When was the divorce granted?

MR. SCHMITZ: Divorce was granted in 2006.

THE COURT: Where?

MR. SCHMITZ: In Galveston.

THE COURT: Okay.

MR. SCHMITZ: And the modification was 2010, April.

THE COURT: Okay. Well, there was another modification filed little over a year?

MR. SCHMITZ: Just a little bit over a year -- at that case -- and her basis -- although she hadn't really said so, I think the second modification I was involved in was very costly and time consuming. It was set for a full jury trial and the whole nine yards.

And I believe, Ms. Gerke is doing this just to complete my client's resources; and we can't continue to go further because she keeps filing these things. And so, we'd like for this to stop at some

point, but since she's bringing this up, we would like to get some attorney fees or something for it because now we're having to hire another expert.

To give the judge a little education, in the 2010 trial, there was a court-appointed expert, if you will, on a -- on the children's mental health.

THE COURT: Okay.

MR. SCHMITZ: That particular court-appointed expert was very expensive -- was paid for. She's in the Children Medical Center; and after that trial, she testified on behalf of my client. This is court-appointed -- not that anybody can do anything with her. She turns around -- and she, Ms. Gerke, files complaint against this particular doctor. This particular doctor don't want to -- because of that complaint.

THE COURT: Okay.

MR. SCHMITZ: This has cost us more and more money every time.

THE COURT: What happened to that complaint?

MR. SCHMITZ: Pardon?

THE COURT: What happened to that complaint?

MR. SCHMITZ: They dismissed that

complaint with that particular doctor.

THE COURT: Why did that cost your client anything?

MR. SCHMITZ: Because that particular expert, if you will, that particular person will not come forward anymore. The modification trial also had an amicus with her. We had to pay half of the amicus costs. And we paid money after money, after money, after money, in that case.

THE COURT: Okay.

MR. SCHMITZ: And so, it just kept going on and on and on. And this is a year later. In that trial -- to let you know about the modification trial, Ms. Gerke claimed the children wanted to live with her. She had people, friends, testify to that. She had her witnesses testify to that, et cetera, et cetera, et cetera. The jury still found, it was in the best interest, after hearing all the evidence, that the children live with my client. Now, she's coming to this court and saying, well, the children want to live with me.

THE COURT: Were any attorney fees assessed against her in that trial?

MR. SCHMITZ: Only on appeal -- only if she appealed. If she appealed, that would be assessed

against her.

THE COURT: Was that the judge's decision or the jury's decision?

MR. SCHMITZ: Jury's decision. Jury ruled that if she appealed the case, there will be attorney fees assess.

THE COURT: But they didn't give any attorney's fees for the defense of the main case.

MR. SCHMITZ: For -- that's correct. No attorney fees were assessed in the main case -- just that if it's appealed, but it is basically the same case we litigate all over again. I don't know when it stops.

THE COURT: I don't know whether it is or it isn't. That's a fact or situation that gets -- in my opinion, it gets approached as the trial proceeds.

MR. SCHMITZ: Right. But we need to be able to defend ourselves -- and I don't have a problem -- again, if she's paying for --

THE COURT: I'll say to both sides that this kind of litigation, loser pays. If you lose, you are going to pay the attorney's fees for the other side. If she wins you pay her attorney's fees.

MR. SCHMITZ: Yes, your Honor.

THE COURT: We'll carry the attorney's fee request in the time of trial.

MR. SCHMITZ: And the expert fees?

THE COURT: If it's your expert, you pay for him. If she hires an expert, she pays for her -- hers.

MR. SCHMITZ: Yes, your Honor.

THE COURT: Anything else?

MS. GERKE: May I give you my --

THE COURT: No, you've already filed it; and it will work its way to our file.

MS. GERKE: I have requested Court order mediation because I --

THE COURT: We require mediation in every case before final trial.

MS. GERKE: I've sent multiple requests to Mr. Schmitz --

THE COURT: I'm just telling both of you that we require mediation before trial. Anything else?

MS. GERKE: If I withdraw my petition for primary custody and just request the expanded visitation, would that allow for just a bench trial?

THE COURT: I'm sorry. Does it allow for --

MS. GERKE: Just a bench trial at this point, not a jury trial?

THE COURT: Yeah, basically. There's

nothing -- there is no issue for a jury to decide if you make that decision.

MS. GERKE: Okay.

THE COURT: All right? All right. Thank you very much.

MR. SCHMITZ: You said that trial is for February, is that going to be moved now to a jury trial?

THE COURT: No. And I don't know because she's indicating she may withdraw her request to be appointed primary.

MR. SCHMITZ: I'm sorry. But if she doesn't, then --

THE COURT: If she does not, as far as I'm concerned, it's on a jury docket.

MR. SCHMITZ: Okay. Thank you.

MS. GERKE: Your Honor, did you make a ruling on conferring my other issues with the children --

THE COURT: I'm not going to make that ruling until we know whether or not there's going to be a jury trial or not a jury trial.

MS. GERKE: Okay, your Honor.

THE COURT: I need an entry date. December 9th on the protective order.

MR. SCHMITZ: December 9th?

THE COURT: Yes.

MR. SCHMITZ: 9:00 a.m., your Honor?

THE COURT: Yes. There's going to be a formal written order prepared. You'll have a chance to review it. If you have any problems with it, come in and we'll listen to you on December the 9th.

Thank y'all.

MR. SCHMITZ: Thank you, your Honor.

Your Honor --

THE COURT: Yeah. Hold on a minute.

MR. SCHMITZ: I think, December 9th is supposed to be advance drafting. Is that a Friday or Thursday?

THE COURT: It's a Friday.

MR. SCHMITZ: I think it's advance drafting.

THE COURT: Advance drafting --

MR. SCHMITZ: Yeah --

THE COURT: -- takes preference over getting this order in.

MR. SCHMITZ: It doesn't, your Honor, but I would ask the Court to wait one week.

THE COURT: To December 16th?

MR. SCHMITZ: Yes, your Honor.

THE COURT: Okay.

MR. SCHMITZ:  Thank you.

THE COURT:  December the 16th instead of the 9th.

MR. SCHMITZ:  Thank you very much, your Honor.

MS. GERKE:  Thank you very much.

(proceedings concluded)

STATE OF TEXAS

COUNTY OF HARRIS

I, Jessica J. Kim, Deputy Court Reporter in and for the 311th District Court of Harris, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, offered by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $ 176.00 and was paid/will be paid by Ms. Mary Lynn Kantara Gerke

Jessica J. Kim, CSR
Texas CSR 8971
Deputy Court Reporter
311th District Court
Harris County, Texas
P.O. BOX 19695
Houston, Texas 77224
Telephone: 832-398-0576
Expiration: 12/31/2013

REPORTER'S RECORD
VOLUME 1 OF 1 VOLUME
TRIAL COURT CAUSE NO. 2011-46281

| IN THE INTEREST OF | ) IN THE DISTRICT COURT |
|---|---|
| J███ K███████, | ) |
| J█████ K███████, | ) HARRIS COUNTY, TEXAS |
| J██ K███████ AND | ) |
| J██████ K███████, | ) |
| | ) |
| MINOR CHILREN | ) 311TH JUDICIAL DISTRICT |

------------------------------------------------------

**HEARING ON MOTIONS**

------------------------------------------------------

On the 17th day of August, 2012, the following proceedings came on to be held in the above-titled and numbered cause before the Honorable Robert Newey, Associate Judge Presiding, held in Houston, Harris County, Texas.

Proceedings reported by computerized stenotype machine.

**ORIGINAL**

EXHIBIT 2

**APPEARANCES**


WILFRIED P. SCHMITZ
SBOT NO. 17778700
Attorney-at-Law
17040 El Camino Real, Suite 400
Houston, Texas 77058
Telephone:  (713) 486-5066
Counsel for Jamil "James" Jesus Kantara


MARY LYNN KANTARA GERKE
Appearing Pro Se
707 Almond Pointe
League City, Texas 77573
Telephone:  (281) 332-8858


DOUGLAS YORK
SBOT NO. 24028243
Attorney-at-Law
3355 W. Alabama, Suite 100
Houston, Texas 77098
Telephone:  (713) 479-5555
Amicus Attorney for the Minor Children

INDEX

VOLUME 1

HEARING ON MOTIONS

August 17,2 012

| | PAGE | VOL. |
|---|---|---|
| Proceedings ................................. | 4 | 1 |
| Court's Ruling ............................. | 13 | 1 |
| Adjournment ................................ | 13 | 1 |
| Reporter's Certificate ..................... | 14 | 1 |

*THE COURT:* Okay. The Court calls Cause Number 2011-46281, In the Interest of J█████, J█s████ J█a██a and J█n██████ K██t█████

Counsel, identify yourself for the record, please.

*MR. SCHMITZ:* Good morning, Your Honor. My name is Wilfried Schmitz, and I represent Mr. Kantara.

*THE COURT:* State your name for the record.

*MS. GERKE:* My name is Mary Gerke. I'm pro se.

*THE COURT:* All right. Are we going to be needing any testimony this morning?

*MR. SCHMITZ:* Testimony depending on -- not on the waiving of the jury request.

*THE COURT:* Okay.

*MR. SCHMITZ:* But we will on the others.

*THE COURT:* The request -- One of the motions pending before the Court today is for the Judge, or me, to confer with the children; correct?

*MS. GERKE:* Correct.

*MR. SCHMITZ:* I believe the case is preferentially set before you, Your Honor.

THE COURT: All right. And everybody has waived their right of appeal?

MR. SCHMITZ: That's correct.

THE COURT: Is that correct?

MS. GERKE: That's correct.

THE COURT: All right. To Judge Demp -- to Judge Pratt, rather. Not waiving the right of appeal to the Court of Appeals.

MR. SCHMITZ: Exactly.

THE COURT: Okay. I'm going to grant the motion to confer. I assume it's unopposed.

MR. SCHMITZ: It's unopposed at the time of trial.

THE COURT: Okay. And the trial is set for when?

MR. SCHMITZ: I believe it's October the 9th, 10th and 11th.

THE COURT: All right. What I'd like you to do is after we finish this morning, see Lawrence and get a setting for me to interview the children closer to the trial date than now.

MR. SCHMITZ: Sure.

THE COURT: All right. What's the next motion?

MS. GERKE: I also had a -- I had a

motion to re-mediate. We attended a mediation before Mr. Schmitz had the continuance because he has another setting and Mr. York was not able to attend that mediation.

THE COURT: Who was the mediator?

MS. GERKE: It was Judge Stansbury.

THE COURT: Are you willing to --

MR. SCHMITZ: Your Honor, this case has been going on in many directions for some time for many, many years. No successful mediations. Prior -- The previous one to this one, we were so far apart Judge Stansbury did a yeoman's job but still --

THE COURT: When was the last time it was mediated?

MR. SCHMITZ: About a week or two ago.

THE COURT: A week ago?

MS. GERKE: A couple of weeks ago. It was a half-day mediation and Mr. York couldn't be present to offer any sort of assistance in trying to bring the sides together, and Judge Stansbury was completely new and he had to spend most of the time just learning about the size of the case. And so there just wasn't enough time with the issues involved and then not having the amicus present, he

was out of the country, it just -- it couldn't mediate.

MR. SCHMITZ: Your Honor, remember this case was filed just shortly after a year after a jury found my client should have the primary custody of all four children. And it just -- It goes on and on and on; and mediation, I'll just represent to the Court, in all likelihood there's a very, very low if not, well, very low chance of ever settling these people.

THE COURT: Let me come back to the mediation.

What's the third motion?

MS. GERKE: The last motion I need Mr. York's recommendation. It's the emergency order for counseling for our autistic son. He's not received counseling treatment for two-and-a-half years and --

THE COURT: Why now is it suddenly an emergency?

MS. GERKE: School is about to start. Let me back up. In February of this year an amicus was appointed as a result of the emergency order for counseling.

THE COURT: That was Mr. York?

MS. GERKE: That was Mr. York. J█████ had received an out-of-school suspension. He's just ten -- he was just ten at the time. He's now 11. He's -- When he has a lot of pressures and stresses at school, not to mention familywise, and he needs additional supports because he's deteriorating. School is going to start in a week and we keep postponing getting him a counselor to help him with his behavioral issues. He does have supports in school but they only address him from an academic standpoint not necessarily from a wholistic psychological standpoint.

THE COURT: Okay. What's your response to that?

MR. SCHMITZ: First of all, Your Honor, J█████, he, he's on the autistic spectrum but he's not supposedly autistic by itself. Now, with regard to having counseling and her request for counseling, the Court had appointed and he has given his report in a band-aid oral videotaped deposition for six hours with Kit Harrison. Kit Harrison said it could be disastrous at this point to actually have a healthcare provider do that, per se, at this particular point. He does recommend some psychological --

THE COURT: Disastrous because why?

MR. SCHMITZ: In this particular, and I've got the parts of the deposition here, what happens is mom continues to talk to the children about this and that's why we would have oral testimony today. To give you some background, what we would show the Court --

THE COURT: You're alleging mom keeps talking to the children about what?

MR. SCHMITZ: About what you talk to Kit Harrison about. She's putting pressure on the children to live with her. She's, for example, the young man that we're talking about --

THE COURT: J███████.

MR. SCHMITZ: -- J████████ she represented to the young man that, my client can talk about it better, he had to console him, but she told him he's going to grow up to be a plumber, that he want to be an astronaut, he's going to grow up to be a plumber, he's not smart enough. That he was an accident, the parents didn't really want him, among other things. This is not only she's doing it just to this one child, the youngest child, but she's doing it to all the children; and we have proof of that. It's in Dr. Harrison's report.

Also we've got some of the text messages going back and forth about what she's done. If you send him to a counselor right now and she's allowed to talk to that counselor or talk to the kids about what's said, it's just -- that's what the disaster will be, because that's all she does.

Now he did say psychotherapy might be beneficial if under very controlled limited circumstances. For example, neither parent can talk -- It will be only for the child. The psychotherapist --

*THE COURT:* All right. I need Mr. York's assistance on this issue.

*MS. GERKE:* Mr. Schmitz mislead you a lot, Your Honor.

*THE COURT:* Let me get Mr. York on the phone.

*(Telephone conference begins)*

*MR. YORK:* Hello.

*THE COURT:* Mr. York.

*MR. YORK:* Yes.

*THE COURT:* Judge, Newey.

*MR. YORK:* Hello, Judge.

*THE COURT:* I've got the Gerke matter in front of me. We've agreed that I'll interview the

children as we get closer to the trial date.

MR. YORK: That will be fine.

THE COURT: There's been a request for additional mediation that Mr. Schmitz doesn't think will be fruitful. I'll come back to that one. The current issue is Ms. Gerke has filed a request for counseliing, an emergency motion so that J█████ could receive counseling for his autism and whatever is going on.

Mr. Schmitz says Dr. Harrison says to enter into counseling with this youngster right now would be disastrous. What is your take on all of that?

MR. YORK: I haven't got with Kit yet. I told the mother that I'm not opposed until I hear different; but I'm not for it, you know, either. So I need to get with Kit.

THE COURT: Mr. Schmitz says that Harrison's report indicates that counseling for J█████ right now would be disastrous.

MR. YORK: If that is the case, then I would defer to Kit Harrison.

MR. SCHMITZ: Excuse me. In his deposition.

THE COURT: Well you need to talk to

Kit Harrison and I'll just take this motion under advisement until I get some feedback from you; or if we need to hear from Dr. Harrison in person so everybody can interrogate him, we need to schedule something.

MR. YORK: That will be fine, Judge.

THE COURT: Do you have a position on whether additional mediation with Judge Stansbury might result in a settlement?

MR. YORK: It's a pretty tough case, but I think I'm always encouraging mediation.

THE COURT: Okay. Do you have any out-of-country trips planned between now and October?

MR. YORK: No, sir. We're all good.

THE COURT: All right. I want you to take the lead in scheduling mediation with Ms. Gerke and Mr. Schmitz and Judge Stansbury.

MR. YORK: I certainly will, Judge.

THE COURT: Okay. And we obviously need that done sooner rather than later.

MR. YORK: Yes, sir.

THE COURT: I don't know how much damage these kids are suffering as a result of this case continuing to pend and linger on, but I'd like to get it resolved.

MR. YORK: Yes, sir.

THE COURT: Okay. Anybody have any comments or questions for Mr. York?

MR. SCHMITZ: I do. I just want to correct the record, Your Honor, on the record.

The word disastrous, he didn't use the word disastrous in his report. He used the word disastrous in his deposition talking about the report. I just wanted to clear that up.

THE COURT: Okay. All right. Anything further?

MR. SCHMITZ: No, Your Honor.

MR. YORK: No, sir.

THE COURT: All right. I'm granting the motion to confer with the child. I'm ordering mediation with Judge Stansbury.

MR. SCHMITZ: A half day again or a full day?

THE COURT: Doug, do you think it ought to be a half day or a full day?

MR. YORK: I'd say half day.

THE COURT: All right. Schedule a half-day mediation, and I'm not going to rule on the request for emergency motion for counseling until you've had a chance to get ahold of Dr. Harrison and

report back.

MR. YORK:  Yes, sir.  Certainly.

THE COURT:  All right.  Thank y'all.

MR. YORK:  Thank you, Judge.

THE COURT:  Bye.  Okay.


(Conclusion of proceedings)

STATE OF TEXAS

COUNTY OF HARRIS

I, Marilee M. Anderson, Official Court Reporter in and for the 311th District Court of Harris County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $_____ and was paid/will be paid by _____.

WITNESS MY HAND this the _____ day of _____, 2012.

_____
Marilee M. Anderson, CSR
Texas CSR 3271
Official Court Reporter
311th District Court
1115 Congress, 7th Floor
Houston, Texas 77002
Telephone: (713) 755-2966
Expiration: 12/31/2012



FOCUS - 1 of 1 DOCUMENT

**LEANNE NICOLE WELLS, Appellant v. DOUGLAS GIBSON WELLS, Appellee**

**NO. 14-09-00811-CV**

**COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT, HOUSTON**

*2010 Tex. App. LEXIS 6787*

**August 19, 2010, Memorandum Opinion Filed**

**SUBSEQUENT HISTORY:** Petition for review denied by *Wells v. Wells, 2011 Tex. LEXIS 134 (Tex., Feb. 18, 2011)*

**PRIOR HISTORY:** [*1]
On Appeal from the 328th District Court, Fort Bend County, Texas. Trial Court Cause No. 09-DCV-169191.

**COUNSEL:** For appellants: Michael William Elliott, Richmond, TX.

For appellees: David Perwin, Rosenberg, TX; Adam J. Morris, Houston, TX.

**JUDGES:** Panel consists of Chief Justice Hedges and Justices Yates and Boyce.

**OPINION**

**MEMORANDUM OPINION**

In her sole issue on appeal, appellant Leanne Nicole Wells asserts that the trial court erred in ruling that her appeal of an associate judge's entry of the final divorce decree to the referring court was untimely. However, the record reflects that appellant waived her right of appeal to the referring court in writing at the June 18, 2009 hearing before the associate judge. *See Tex. Fam. Code Ann. § 201.015(g)* (Vernon Supp. 2009) ("Before the start of a hearing by an associate judge, the parties may waive the right of a de novo hearing before the referring court in writing or on the record."). Specifically, appellant signed an agreed order before the associate judge that states, "I hereby waive any right of appeal to the referring court pursuant to *Section 201.015(g) Texas Family Code*." Moreover, this agreed order reflects that the nature of the proceeding was a "Final Decree of Divorce." The associate judge signed the order, noting that the divorce decree would be entered on July 15, 2009. An associate [*2] judge "may sign a final order that includes a waiver of the right of appeal pursuant to *Section 201.015*." *Id. § 201.007(a)(16)* (Vernon 2008).

Under these circumstances, we conclude that appellant waived her right to appeal the associate judge's order to the referring court. We therefore overrule her sole appellate issue and affirm the trial court's judgment.

PER CURIAM

EXHIBIT 3